IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL CASE | § | |
| *Plaintiff* | § § § | |
| v. | § § | Case 3:09-cv-01283-N |
| TWO SIGMA INVESTMENTS, LLC | § § | |
| *Defendant* | § § | |

**APPENDIX TO DEFENDANT TWO SIGMA INVESTMENTS, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND BRIEF IN SUPPORT**

Defendant Two Sigma Investments, LLC, ("TSI") presents this appendix to its Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support. The appendix contains:

1. The Affidavit of Peter Desmond at appendix page 2; and

2. Plaintiff's Original Complaint at appendix page 6.

Respectfully submitted,

SHIELDS, BRITTON & FRASER, PC

/s/
Philip T. Kingston
Texas State Bar No. 24010159
5401 Village Creek Drive
Plano, Texas 75093
972-788-2040
972-788-4332 facsimile
pkingston@sbflegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DANIEL CASE | § |
| *Plaintiff* | § § § |
| v. | § Case 3:09-cv-01283-N |
| TWO SIGMA INVESTMENTS, LLC | § § |
| *Defendant* | § § |

## AFFIDAVIT OF PETER DESMOND

THE STATE OF NEW YORK §
§
COUNTY OF NEW YORK §

BEFORE ME, the undersigned notary, appeared Peter Desmond, whose name is subscribed hereto and who, after being duly sworn, deposed and stated the following:

1. "I am over the age of 18. I am in all other ways competent to make this Affidavit. I have personal knowledge of the facts stated herein, and the facts stated herein are true and correct. I am authorized to make this affidavit for Defendant Two Sigma Investments, LLC, ("TSI") by virtue of my position as Chief Strategy Officer of TSI."

2. "TSI is a finance and technology firm that actively manages money across the world markets through the innovative use of technology and investment strategies. These strategies are based on statistical models developed using rigorous mathematical analysis and the industry insight of TSI's large and experienced team."

3. "TSI does not maintain an office in Texas. It has no Texas resident employees. It does not make any products or perform any services in Texas. It is not qualified to do business in Texas and does not have an agent for service of process in Texas. TSI does

AFFIDAVIT OF PETER DESMOND                                                     PAGE 1 OF 4

not own real estate in Texas. It does not advertise in Texas. It does not have agents for sales, recruiting, or for any other purpose in Texas."

4. "In 2007 and 2008, TSI engaged in internal discussions about exploring reinsurance investment strategies and ultimately decided to evaluate the possibility of building a reinsurance business."

5. "An existing employee of TSI, Rishi Ganti (who works for TSI in New York and reports to me), recommended contacting Plaintiff as a potential candidate for employment to build a reinsurance investment business within TSI. At no time did TSI focus its search for reinsurance expertise on Texas. Plaintiff's Texas residence was a mere fortuity of the search process. In fact, TSI previously interviewed another candidate because of his reinsurance experience and this candidate was not from Texas."

6. "In late 2008, TSI contacted Plaintiff to discuss whether a viable and profitable reinsurance business was feasible to build within TSI. Plaintiff represented to TSI that he could develop such a model, and TSI agreed to review Plaintiff's proposal. In the fall of 2008, Plaintiff met with one of the two Co-Chairmen of TSI at TSI's offices in New York to discuss the business plan. Thereafter, at two separate times in April, 2009, Plaintiff traveled to New York and interviewed at TSI's offices in New York with several TSI employees, including the other Co-Chairmen of TSI"

7. "Plaintiff's potential employment with TSI contemplated that Plaintiff would move his residence to New York and work full time at TSI's offices in New York. All of Plaintiff's duties in TSI's employ were to be performed outside of Texas and most of the

duties were to be performed in New York. All of TSI's potential obligations were to be performed in New York."

8. "TSI ultimately determined that it would extend an offer of employment to Plaintiff on an at-will basis as reflected in TSI's April 22, 2009, letter to Plaintiff. Plaintiff did not ever become employed by TSI in New York, but did continue discussions about a potential position at TSI in New York for a number of weeks following receipt of the April 22, 2009 offer letter. Specifically, on April 22, 2009, three TSI employees, Chris Sales, Geoffrey Duncombe and I, spoke with Plaintiff by phone to raise questions about the tax implications in Plaintiff's model and told him to "sit tight" to see if those issues could be resolved. During that call, Plaintiff informed us that he had not yet resigned from HBK, his then-current employer."

9. "TSI's subsequent analysis of Plaintiff's model revealed that the business model had costs and risks that made it unappealing to TSI. Accordingly, TSI rescinded its offer of employment to Plaintiff, which offer had been based on implementation of this model. Shortly thereafter, TSI made a second offer of employment to Plaintiff to come to work for TSI in New York in a different role. After Plaintiff rejected its second offer, TSI formally rescinded the second offer."

10. "No employee or agent of TSI ever met with Plaintiff in Texas. TSI employees had telephone conversations with Plaintiff regarding his proposed business model and potential employment with TSI. Other than calls, TSI's only other contacts with Texas related to this matter were sending the April 22, 2009 letter and the May 21, 2009 letter to Plaintiff in Texas."

Further affiant sayeth naught.

*[Signature: Peter Desmond]*

SUBSCRIBED AND SWORN TO BEFORE ME by the said Peter Desmond on this 3RD day of August, 2009, to certify which witness my hand and seal of office.

*[Signature]*

Notary Public, State of New York
MATTHEW B. SIANO, ESQ.
Notary Public, State of New York
No. 02SI6201573
Qualified in Westchester County
Commission Expires March 2, 2013

AFFIDAVIT OF PETER DESMOND                                                         PAGE 4 OF 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL CASE, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO._____ |
| | § | |
| v. | § | |
| | § | |
| TWO SIGMA INVESTMENTS, LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Daniel Case complains of Defendant Two Sigma Investments, LLC under common law of the State of Texas. For these causes of actions, Plaintiff respectfully states as follows:

## I.  PARTIES

1. Daniel Case (hereinafter "Case" or "Plaintiff") is a citizen of Texas and resides in Dallas, Dallas County, Texas.

2. Defendant Two Sigma Investments, LLC (hereinafter "Two Sigma" or "Defendant") is a Delaware corporation with corporate headquarters in New York, New York. At all times material to Plaintiff's claims, Two Sigma was qualified to do and is doing business in the State of Texas. The causes of action asserted herein arose from and are connected to purposeful acts committed by Two Sigma in Dallas, Texas in anticipation of Plaintiff's employment with Two Sigma. Two Sigma may be served with process by its registered

agent Corporation Service Company dba CSC- Lawyers Incorporating Service at 701 Brazos, Suite 1050, Austin, TX 78701.

## II.   JURISDICTION AND VENUE

3. This district court has original jurisdiction of this civil action because the amount in controversy exceeds $75,000 and all parties are diverse under 29 U.S.C. §1332. Plaintiff Daniel Case is a citizen of Texas. Two Sigma is a citizen of New York and Delaware.

4. This is a breach of contract case. Plaintiff's claims are in excess of $750,000 as the face of the contract confirms.

5. A substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in Dallas, Dallas County, Texas. Venue is therefore proper in this district and division under 28 U.S.C. §1391(a).

## III.   FACTUAL BACKGROUND

6. Two Sigma is a finance and technology firm that manages billions of dollars in assets, and describes itself as a company which has been applying "disciplined, process-driven investment trading strategies since 2001." In short, Two Sigma is a hedge fund investment firm that controls massive amounts of wealth for its elite clientele.

7. Two Sigma initially contacted Case in November 2008. A six-month interview process began. During this period Case (at the direction of Two Sigma) drafted a number of detailed, lengthy memos explaining investment strategies that he would develop for Two Sigma.

8. Two Sigma issued a formal, signed offer of a position at Two Sigma to Case on April 22, 2009; a true and correct copy of the offer is attached as **Exhibit 1** hereto.

9. The offer stated that it was contingent on (1) the execution of an Invention, Non-Disclosure, and Non-Competition Agreement (hereinafter "non-compete" the conclusion of (2) a background search satisfactory to Two Sigma, and (3) the necessary permission to work in the United States. Case met these contingencies.

10. The offer stated that Case would receive a one-time sign on bonus of $53,000, a base salary of $125,000 per year, a guaranteed year-end bonus of $375,000 per year (if employment began prior to June 1, 2009) and a payment in lieu of deferred compensation from Case's former employer of $225,000 in three installments -- $45,000 at the end of 2009; $90,000 at the end of 2010; and $90,000 at the end of 2011.

11. On April 22, 2009, Case told his employer HBK Investments, that he was resigning to take a position in another company. On April 23, 2009 Case conveyed his resignation to Chris Sales, Case's primary contact at Two Sigma, who responded enthusiastically "Great – glad to have you on board."

12. The Two Sigma offer became a contract when Case accepted the offer and signed the offer letter on April 25, 2009. The contract stated that Case's start date was May 11, 2009. A true and correct copy of the contract is attached as **Exhibit 2** hereto.

13. Case reasonably and substantially relied upon promises of Two Sigma to his detriment, and such reliance by Case was foreseeable. In such reliance Case resigned from his position at HBK where he earned more than $800,000.00 a year, where he had substantial employee benefits, and where he had accrued deferred compensation at or greater than $225,000. Case's resignation from HBK Investments cost Case his opportunity to earn a significant income, $225,000 in deferred compensation, his year-end bonus, and his employment benefits.

14. On April 30, 2009, with his employment agreement in hand, Case traveled to New York to locate housing for his family.

15. On April 30, 2009, while Case was in New York, Case told Sales he was in New York looking for an apartment. Sales told Case that he should hold off on getting an apartment. Case told Sales, "These guys have not signed off yet." Case asked Sales, "Is the offer gone?" Sales replied: "No, no, no, emphatically no. We're just working through it on our end."

16. For the next several weeks Case and Two Sigma discussed additional diligence on the business plan. During this time Case continued to share business strategies and ideas with Two Sigma. Two Sigma assured Case that he would be on payroll soon, while it continued to receive and benefit from Case's ideas and strategies.

17. On May 22, 2009, Case received a letter dated May 21, 2009, a true and correct copy of which is attached hereto as **Exhibit 3**, stating it was formal confirmation that notified Case that Two Sigma "has revoked its offer of employment" to Case. The May 21, 2009 letter from Two Sigma falsely stated that Two Sigma had previously recommended to Case that he refrain from resigning.

18. Following its May 21, 2009 letter to Case, Two Sigma has communicated to Case that it would extend him a "replacement" offer of six (6) months employment with greatly reduced compensation. Later Two Sigma suggested to Case that he make Two Sigma a proposal for Case to do consulting work for Two Sigma. Two Sigma has not paid or offered to pay Case the $225,000 in lieu of deferred compensation called for by the contract and/or compensation to Case to make him whole for his reliance damages flowing from the promises by Two Sigma to Case that Case reasonably and substantially

relied upon to his detriment. Instead of compensation, Two Sigma provided these words: "We wish you luck in your future and encourage you to remain in contact with us." See **Exhibit 3**.

### IV.   CAUSES OF ACTION

#### *Count One: Breach of Contract*

19. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-18 above as if fully stated herein.

20. Case and Defendant entered into a contract, specifically **Exhibit 2** hereto.

21. Adequate consideration supported the contract as to $225,000 in payments by Two Sigma to Case in lieu of deferred compensation from Case's former employer. The parties mutually agreed on all material terms as to this contract. All conditions precedent have occurred or been performed. Defendants are not excused from performing under this contract.

22. While employment under the contract would have been at will, the contract provided specifically that:

> You will also receive a payment in lieu of deferred compensation from your former employer in the amount of $225,000. Such payment will be made in three installments on the following schedule based on your continued employment: $45,000 at the end of 2009, $90,000 at the end of 2010; and $90,000 at the end of 2011. Payments will be made by year-end, or as soon thereafter as is practical. Notwithstanding the foregoing, you acknowledge and agree that no bonus payments outlined in this letter will be awarded if you voluntarily resign or give notice of resigning prior to year-end, regardless of your performance or the firm's results.

Case never voluntarily resigned. Case never gave notice of resigning prior to year-end.

23. Following its May 21, 2009 letter to Case, Two Sigma has communicated to Case that it will pay him nothing – not the $225,000 in lieu of deferred compensation called for by

the contract and no compensation to Case to make him whole for his reliance damages flowing from the promises by Two Sigma to Case that case reasonably and substantially relied upon to his detriment. Instead of compensation, Two Sigma provided only these words: "We wish you luck in your future and encourage you to remain in contact with us." See **Exhibit 3**.

24. Case is entitled to recover his reasonable attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001 because his claim is on a written or oral contract.

### *Count Two: Promissory Estoppel / Detrimental Reliance*

25. Case incorporates the allegations set forth in paragraphs 1 through 24 as if fully stated herein.

26. Pleading in the alternative only, in the unlikely event of a finding that no enforceable contract governed the $225,000 contract specified in Count One, Case is entitled to recovery of such amount, in full, plus prejudgment interest on grounds of promissory estoppels and/or detrimental reliance.

27. In addition, and not in the alternative, Case is entitled to reliance damages for his other losses as a result of his reasonable and substantial reliance upon the promises of Two Sigma to offer him employment commencing May 11, 2009.

28. Case lost the value of compensation, deferred compensation, bonus and employee benefits he would have received from his employment at HBK but for his reasonable and substantial reliance on the promises of Two Sigma and its agents.

### V.   JURY DEMAND

29. Under Fed. R. Civ. P. 38(b), Case hereby requests a jury trial on all issues triable of right by a jury.

## VI. DAMAGES

30. Case incorporates the allegations set forth in paragraphs 1 through 29 as if fully stated herein.

31. Case has suffered monetary damages as a result of Defendant's breach of contract, and promissory estoppel/detrimental reliance. Those damages exceed the minimum jurisdictional limits of this Court.

32. Defendant's actions have required Case to retain counsel to bring this claim, and he thus sues for the attorneys' fees incurred in the prosecution of this lawsuit pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that Two Sigma Investments, LLC be summoned to appear and answer, and that on final trial, judgment be granted against Two Sigma Investments, LLC awarding Plaintiff the following:

A. Grant judgment in Case's favor on his breach of contract claim and order Defendant to pay damages suffered by Case resulting from Defendant's breach of its contractual obligations;

B. Award Case full compensation for his damages that resulted from his reliance on the promises of Two Sigma;

C. Award Case pre-judgment and post-judgment interest in the maximum amount permissible under the law;

D. Award Case his reasonable attorney's fees and costs of suit; and

E. Grant such further relief as it may deem necessary and proper.

DATED: July __, 2009

        Respectfully submitted,

        GILLESPIE, ROZEN & WATSKY, P.C.
        3402 Oak Grove Avenue, Suite 200
        Dallas, Texas 75204
        Phone: (214) 720-2009
        Fax: (214) 720-2291

By: */s/ Hal K. Gillespie*
      Hal K. Gillespie
      State Bar No. 07925500
      Attorney in Charge
      Tiffany C. Alvoid
      State Bar No. 24057743

Attorneys for Plaintiff